## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DUSTYN BENNETT,

 **Plaintiff,**      **No.**

LEA COUNTY BOARD
OF COUNTY COMMISSIONERS,

 **Defendant.**

### PLAINTIFF'S COMPLAINT

Plaintiff Dustyn Bennett ("Plaintiff"), through undersigned counsel, complains as follows against the Lea County Board of County Commissioners (the "Board" or "Defendant").

### I. Introduction

1. This is a civil rights and whistleblower retaliation case arising from Plaintiff's reporting of misconduct within the Lea County Sheriff's Office ("LCSO"). In August 2025, Plaintiff alerted his superiors that a corporal within LCSO, Jasmine Sanchez ("Sanchez"), had orchestrated a vehicle stop and re-seizure to punish a citizen.

2. Sanchez was a member of a powerful clique within LCSO that included undersheriff Michael Walker ("Walker"). Thus, instead of firing Sanchez, LCSO's top brass instead targeted Plaintiff. After Plaintiff reported Sanchez's misconduct, Plaintiff was retaliated against through repeated disciplinary write-ups and a baseless use-of-force investigation.

1

3.    Defendant's conduct violates the First Amendment of the United States Constitution, as well as the New Mexico Whistleblower Protection Act. Plaintiff seeks all damages allowed by law.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

4.    Supplemental jurisdiction exists over Plaintiff's state-law claim under 28 U.S.C. § 1367.

5.    Venue and forum are proper in this District under 28 U.S.C. § 1391 because all parties reside in New Mexico and substantively all events giving rise to this action occurred in New Mexico.

## III.    PARTIES

6.    Plaintiff Dustyn Bennett resides in Lea County, New Mexico.

7.    Defendant Lea County Board of County Commissioners is the governing body for Lea County, New Mexico. LCSO is one of its subsidiaries.

## IV.    FACTUAL ALLEGATIONS

10.    On August 3, 2025, Sanchez impounded a vehicle that was connected to a recent burglary. At the time of the impoundment, the vehicle was being operated by someone other than its registered owner.

11.    While the vehicle was impounded, Sanchez searched it and noticed that its rear license plate did not match State records. Sanchez then removed the plate from the vehicle.

12. Once the search was complete, Sanchez contacted the vehicle's registered owner, Betty Perez ("Perez"), to come pick it up.

13. Perez was not a suspect the burglary investigation. However, Sanchez found Perez difficult to work with and decided to punish her for her bad attitude.

14. On or about August 6, 2025, a briefing was held LCSO's office in Hobbs, New Mexico. Plaintiff was in attendance.

15. Plaintiff was a patrol deputy. He had worked for LCSO for 4.5 years and had a spotless disciplinary record.

16. During the briefing, Sanchez recounted how Perez's vehicle came into LCSO's possession, and that she found Perez frustrating.

17. Sanchez further stated that when the vehicle was released later that day, it would not have a rear license plate. Sanchez wanted deputies to pull over Perez and re-impound the vehicle for failure to display a license plate as required by Section 66-3-18, NMSA. Sanchez reasoned that this would inconvenience Perez and cause her to accrue additional towing charges.

18. Later, at around 2:30 P.M., LCSO returned the vehicle to Perez, without informing her that Sanchez had removed the license plate.

19. As soon as the vehicle left the impound lot, Sanchez texted a group chat used by the on-shift deputies. Sanchez told the group Perez's location and which direction she was headed, so that deputies could initiate a traffic stop.

20.    Perez was then pulled over, and the vehicle re-impounded.

21.    Sanchez's behavior was illegal under the United States and New Mexico Constitutions, and Plaintiff knew it. Although Plaintiff's job did not require him to report Sanchez's misconduct, he felt ethically obligated to do so. Accordingly, he reported the incident up the chain of command.

22.    Normal corporals working at normal sheriff's offices would be promptly terminated. However, Sanchez is not a normal corporal, and LCSO is far from a normal sheriff's office.

23.    Sanchez is part of small clique of LCSO employees who have, historically, been the beneficiaries of favorable treatment by LCSO's top brass.

24.    As explained in a recent deposition by LSCO chief deputy Chan Kim ("Kim"), the clique includes Walker, Sanchez, public relations officer Aileen Vizcarra ("Vizcarra"), and Diana Jurado ("Jurado"). A Kim explained, when members of the clique violate policy (or the law), their misconduct is swept under the rug.

25.    Notably, Jurado and Vizcarra were the perpetrators of a revenge pornography scheme against another LCSO deputy, which later led to a lawsuit. Even though that lawsuit recently settled for $3 million, Jurado and Vizcarra have never been subjected to any disciplinary action related to their involvement.

4

26. Sanchez was also raised from a young age by Walker's girlfriend.

27. As soon as Plaintiff blew the whistle on Sanchez, Walker sprang into action to protect Sanchez and make an example of Plaintiff.

28. In the following days, Plaintiff was hit with a litany of internal affairs investigations for trivial and pretextual infractions. These investigations were orchestrated and overseen by Walker.

29. Additionally, Sanchez began spreading false rumors that Plaintiff was planning to somehow steal custody of a child from Plaintiff's significant other's ex-boyfriend.

30. These rumors were malicious and plainly retaliatory. However, when Plaintiff complained about them to Lea County's human resources department, no investigation was opened, and Sanchez was not disciplined.

31. Later, Plaintiff was ordered to appear before a review board on charges that he had used excessive force during an arrest. The incident was captured on camera, and Plaintiff's actions were plainly reasonable, yet he was subjected to disciplinary proceedings all the same.

32. Walker oversaw the review board and determined that Plaintiff should be suspended without pay. Plaintiff appealed Walker's determination to Sheriff Corey Helton, who downgraded Plaintiff's punishment to a written reprimand.

33.    It is clear to Plaintiff that, because of his decision to complain about Sanchez's misconduct, he is no longer welcome at LCSO, and that he will continue to be written up, investigated, and otherwise subjected to a hostile work environment until he resigns or is fired.

34.    The retaliatory actions have damaged Plaintiff's reputation, career prospects, and working conditions.

35.    Defendants' conduct would chill a person of ordinary firmness from reporting misconduct.

## V.    CAUSES OF ACTION

### COUNT 1

### Municipal Liability (*Monell*) (42 U.S.C. § 1983)

36.    Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

37.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the existence of a municipal policy or custom.

38.    Plaintiff engaged in First Amendment-protected speech on matters of public concern by, among other things, Sanchez's violations of a citizen's rights.

39.    Plaintiff's speech was not made pursuant to his official duties.

40. The Board's interests, as employer, in promoting the efficiency of the public service are insufficient to outweigh Plaintiff's free speech interests.

41. Plaintiff was retaliated against for engaging in protected speech by, among other things, subjecting him to a hostile work environment, subjecting him to frivolous and harassing investigations

42. Plaintiff's protected speech was a motivating factor in the adverse employment actions he suffered.

43. The Board would not have reached the same employment decision in the absence of the protected conduct—indeed, Plaintiff had had a spotless record prior to complaining about Sanchez

44. As alleged herein, the Board has a custom or practice of writing up or otherwise punishing employees who object to, complain about, or refuse to participate in wrongful conduct by LCSO officials.

45. The Board was aware of Helton and Walker's improper, retaliatory actions yet took no action to prevent, correct, or stop their wrongdoing.

46. The Board failed to adequately train and supervise county employees in matters related to the exercise of free speech.

47. The deprivation of Plaintiff's rights proximately caused him to suffer damages including emotional distress and loss of income.

48. Plaintiff is entitled to actual damages, reasonable attorney's fees, and costs of suit.

## COUNT 2

**Whistleblower Protection Act, (N. M. S. A. 1978, § 10-16C-1 *et seq*)**

49.     Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

50.     Plaintiff is a "public employee" as that term is used in NMSA 1978, Section 10- 16C-1.

51.     The Board is a "public employer" as that term is used in NMSA 1978, Section 10- 16C-1.

52.     Plaintiff suffered adverse employment action including, among other things, being subjected to frivolous and harassing investigations and write-ups.

53.      The Board engaged in retaliatory action against Plaintiff because Plaintiff communicated to the public employer about an action by Sanchez that he believed in good faith was improper or illegal.

54.     Plaintiff is entitled to actual damages as well as reasonable attorney's fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Require Defendants to pay actual damages;

2. Require Defendants to pay interest, reasonable attorney's fees, expenses, and costs of suit;

8

3. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted,


**WGLA, LLP**


*/s/Benjamin Gubernick*
Benjamin Gubernick
717 Texas Ave., Suite 1200
Houston, TX 77002
(346) 394-8056
ben@wglawllp.com

*Attorneys for Plaintiff*